Christopher W. Keegan (SBN 232045)
chris.keegan@kirkland.com
KIRKLAND & ELLIS LLP
555 California St., Suite 2900
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Counsel for Defendants*
*Amplify Energy Corp. and*
*Beta Operating Company, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HILL'S BOAT SERVICE, INC, <br><br> Plaintiff, <br><br> v. <br><br> AMPLIFY ENERGY CORP.; BETA OPERATING CO LLC; and DOES 1 through 60 inclusive, <br><br> Defendants. | CASE NO.   21-cv-1734 <br><br> **DEFENDANTS' AMPLIFY ENERGY CORPORATION AND BETA OPERATING COMPANY, LLC'S NOTICE OF REMOVAL** <br><br> Complaint Filed Date: October 5, 2021 |

Defendants Amplify Energy Corporation and Beta Operating Company, LLC ("Defendants") notice their removal of the above-captioned action from the Superior Court of the State of California for the County of Orange to the United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1331, 1333, 1441(a), and 1446, and pursuant to 43 U.S.C. § 1331.[1]

## BACKGROUND

1. Plaintiff Hill's Boat Service, Inc. alleges that it is a resident of California. (Ex. A (Compl.) ¶ 9.) Plaintiff alleges it operates a fuel dock that provides diesel fuel delivery, fuel tank cleaning, and oil changes. (*Id.* ¶ 10.)

2. Plaintiff alleges it was harmed by an offshore oil spill and the subsequent closure of beaches and harbors over the first weekend in October 2021. (*Id.* ¶ 30.) Specifically, Plaintiff alleges the closures reduced maritime activity, causing it to suffer a loss of business. (*Id.* ¶ 30.)

3. Defendants operate offshore platforms and a pipeline off the Southern Californian coast. (*Id.* ¶ 2.) Plaintiff contends Defendants caused a spill due to their allegedly negligent operation of their platforms and pipeline. (*Id.*)

4. On October 5, 2021, Plaintiff filed suit against Defendants in Orange County Superior Court. (Ex. A (Compl.)) Plaintiff brought a one-count claim for negligence and seeks economic damages. (*Id.*)

## BASIS FOR JURISDICTION

5. This case is removable for three, independent reasons: (1) this Court has original federal admiralty jurisdiction; (2) this Court has federal-question jurisdiction pursuant to the Outer Continental Shelf Lands Act; and (3) this Court has federal-

---

[1] Defendants reserve all rights otherwise to respond to this lawsuit, including any objection to jurisdiction or improper venue.

While Plaintiff named Does 1-60 as defendants, "removal does not require the consent of the unnamed Doe Defendants." *Gamarra v. ADT, LLC*, No. 2:20-cv-10407-VAP-KSx, 2021 WL 223250, at *3 (C.D. Cal. Jan. 21, 2021) (citing *Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011).

question jurisdiction because Plaintiff's claim raises important questions of federal law and implicates the network of federal statutes and regulations covering oil production and development.

6. **Admiralty jurisdiction.** The Constitution extends the federal judicial power "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. Art. III, § 2. Further, 28 U.S.C. § 1333 grants district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." *See also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 531 (1995).

7. Admiralty jurisdiction exists, as here, if (1) the alleged "tort occurred on navigable water" or the alleged "injury suffered on land was caused by a vessel on navigable water"; and (2) if the challenged conduct has a sufficient connection to traditional maritime activity and could substantially affect "maritime commerce." *Id*. at 534. Navigable waters are those "used or capable or susceptible of being used as an interstate highway for commerce over which trade or travel is or may be conducted in the customary modes of travel on water," *Finneseth v. Carter*, 712 F.2d 1041, 1044 (6th Cir. 1983), and also encompass "the navigable waters immediately adjacent to a dock," *Interlake S. S. Co. v. Nielsen*, 338 F.2d 879, 883 (6th Cir. 1964).

8. Those elements are satisfied here. <u>First</u>, Plaintiff's allegations concern conduct on navigable water. Plaintiff admits it operates "one of the two fuel docks located in Newport Harbor" and "provide[s] services to the largest recreational harbor in the country," where Defendants allegedly caused Plaintiff harm. (Ex. A (Compl.) ¶ 10.) Plaintiff further alleges Defendants negligently operated an "offshore platform" and pipeline "connected to" that platform (Ex. A (Compl.) ¶ 2), including by "failing to install reasonable safety equipment and remediations" on the platform and pipeline, and failing to report a leak from the pipeline. (Ex. A (Compl.) ¶ 34). Additionally, public reports that an anchor strike from one or more cargo ships that "routinely move through

the area from the ports of Los Angeles and Long Beach" may have caused or contributed to the leak.[2]

9. <u>Second</u>, the alleged conduct also has a sufficient connection to a traditional maritime activity because "the general features of the type of incident . . . has a 'potentially disruptive impact on maritime commerce.'" *Grubart*, 513 U.S. at 534. *See also Union Oil Co. v. Oppen*, 501 F.2d 558, 561 (9th Cir. 1974) (stating "the fishing industry is clearly a part of traditional maritime activity"); *Gruver v. Lesman Fisheries, Inc.*, 489 F.3d 978, 982 (9th Cir. 2007) (holding that failure to pay crewmember of a ship has a substantial relationship to traditional maritime activities). Plaintiff alleges that Defendants disrupted its maritime commerce, as Plaintiff's fuel dock "supports a variety of maritime industries such as boatbuilding and commercial fishing." (Ex. A (Compl.) ¶ 10.) Removal pursuant to admiralty jurisdiction is therefore proper. *Taghadomi v. United States*, 401 F.3d 1080, 1087 (9th Cir. 2005) ("[V]irtually every activity involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction."); *Union Oil*, 501 F.2d at 561 (noting that suit by commercial fishermen for lost profits attributable to an oil spill in the Santa Barbara Channel "bears a significant relationship to traditional maritime activity.").

10. **Outer Continental Shelf Lands Act jurisdiction.** This Court has original jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq*. OCSLA provides, in relevant part, that "district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of

---

[2] https://fox5sandiego.com/news/california-news/pipeline-anchor-strike-may-have-occurred-months-before-spill/. See *In re Est. of Sellers*, 657 F. Supp. 168, 170 (W.D. Wash. 1987) (court may look "beyond the face of the complaint to the substance of the claim to determine removability.") (citing *Avco Corp. v. Aero Lodge No. 735 IAM*, 390 U.S. 557 (1968).

the outer Continental Shelf, or which involves rights to such minerals." 43 U.S.C. § 1349(b)(1)(A).

11. OCSLA defines the outer Continental Shelf as "all submerged lands lying seaward and outside of the area of [state boundary] lands beneath navigable waters as defined in section 1301 of this title," which in turn defines state boundary lands as those extending no more than three geographical miles into the Pacific Ocean. 43 U.S.C. § 1301, 1331(b). "Minerals" include "oil" and "gas." 43 U.S.C. § 1331(q). "Exploration" is the "process of searching for minerals, including . . . any drilling." 43 U.S.C. § 1331(k).

12. In enacting Section 1349(b)(1), "Congress intended for the judicial power of the United States to be extended to the entire range of legal disputes that it knew would arise relating to resource development on the [OCS]." *Laredo Offshore Constructors, Inc. v. Hunt Oil. Co.*, 754 F.2d 1223, 1228 (5th Cir. 1985). Consistent with Congress' intent, courts repeatedly have found OCSLA jurisdiction if resolution of the dispute foreseeably could affect the efficient production of minerals from the OCS. *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 569 (5th Cir. 1994).

13. That standard is satisfied here. Plaintiff alleges that its claim arises from Defendants' production of oil, on a platform located on the outer Continental Shelf, approximately nine miles from the closest point on shore in Huntington Beach, California. *See* (Ex. A (Compl.) ¶ 1.)

14. **Federal-question jurisdiction**. Removal is also proper pursuant to traditional federal-question jurisdiction.

15. A federal court may exercise jurisdiction over civil actions "arising under" the laws of the United States. 28 U.S.C. § 1331. Where state law creates a cause of action, federal jurisdiction may still lie if "it appears that some substantial, disputed question of federal law is a *necessary* element of one of the well-pleaded state claims [.]" *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 345 (9th Cir. 1996) (citing *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern*

*California*, 463 U.S. 1, 13 (1983)).  The question is whether the state-law claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

16. Here, removal is proper because analyzing the duty of care for Plaintiff's negligence claim implicates various federal statutes and regulations that guide how Defendants and others operate their platforms and pipelines.  This framework includes the Federal Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et. seq.*, the Federal Clean Water Act, 33 U.S.C. § 1251, *et seq.*, and regulations thereunder.

## REMOVAL IS TIMELY

17. Removal is timely under 28 U.S.C. § 1446(b).  The Complaint was filed on October 5, 2021. (Ex. A (Compl.).)  Pursuant to 28 U.S.C. § 1446(b), Defendants have filed this Notice of Removal within thirty days of receiving a copy of the Complaint.

18. Pursuant to 28 U.S.C. § 1446(a), Defendants have attached to this Notice a copy of all pleadings, orders, and other papers filed on the state court docket to date. (Defendants have not been served.)

## NOTICE TO THE STATE COURT

19. Pursuant to 28 U.S.C. § 1446(d), Defendants will serve a copy of this Notice of Removal on Plaintiff and file it with the Superior Court of the State of California, Orange County.

## VENUE

20. The state court in which Plaintiff commenced this case is within this Court's federal district.  (*See* Ex. A (Compl.))  Therefore, this action is properly removable to this Court pursuant to 28 U.S.C. § 1446(a).

| | | |
|---|---|---|
| 1 | DATED:  October 19, 2021 | Respectfully submitted, |
| 2 | | |
| 3 | | */s/ Christopher W. Keegan* |
| 4 | | Christopher W. Keegan (SBN 232045)<br>chris.keegan@kirkland.com |
| 5 | | KIRKLAND & ELLIS LLP<br>555 California St., Suite 2900 |
| 6 | | San Francisco, CA 94104 |
| 7 | | Telephone: (415) 439-1400<br>Facsimile: (415) 439-1500 |
| 8 | | |
| 9 | | *Counsel for Defendants* |
| 10 | | *Amplify Energy Corp. and*<br>*Beta Operating Company, LLC* |